IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NATHAN MILLER : | |
|       Plaintiff : | |
| : | |
| vs. : | Civil Action No. 2:21-CV-00944-ER |
| : | |
| AMAZON.COM SERVICES, INC. and : | |
| QUEST DIAGNOSTICS CLINICAL : | |
| LABORATORIES, INC. : | |
|       Defendants : | |

**QUEST DIAGNOSTICS CLINICAL LABORATORIES, INC.'S
BRIEF IN SUPPORT OF ITS MOTION TO
DISMISS PLAINTIFF NATHAN MILLER'S COMPLAINT**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant Quest Diagnostics Clinical Laboratories, Inc. ("Quest Diagnostics"), by and through undersigned counsel, files its Brief in Support of its Motion to Dismiss Plaintiff Nathan Miller ("Miller")'s Complaint. In support, Quest Diagnostics states as follows:

## I.
## INTRODUCTION

Miller is a former seasonal Amazon employee who applied for a permanent position. Amazon did not hire Miller when he tested positive for marijuana on his pre-employment drug test despite his medical marijuana license. The crux of Miller's claims against Quest Diagnostics, which tested Miller's oral fluid specimen and accurately reported the test results—a fact explicitly acknowledged by Miller—are that Quest Diagnostics violated Pennsylvania's Medical Marijuana Act, 35 P.S. § 10231.2103(b) ("MMA"). However, the anti-discrimination provision of the statute only applies to employers, so that claim fails as to Quest Diagnostics. Similarly, Miller's "public policy" claim against Quest Diagnostics based on an exception to the at-will employment doctrine also fails because Quest Diagnostics was not his employer. Miller's remaining claims against Quest Diagnostics are equally baseless. His breach of contract claim fails since he was an at-will

employee and not a party to any contract—employment or otherwise—with Quest Diagnostics. Finally, he fails to plead the essential elements of an invasion of privacy and conspiracy claims.

Accordingly, Quest Diagnostics respectfully requests that the Court dismiss all of Miller's claims against it with prejudice, as amendment would be futile.

## II.
## FACTUAL BACKGROUND

From April to July 2020, Miller was employed by co-defendant Amazon.com Services, Inc. ("Amazon") as a Seasonal Fulfillment Associate. (Complaint, ¶ 7). In July 2020, Miller applied for a transfer to a full-time position with Amazon, which was contingent upon passing a drug test in accordance with Amazon's workplace drug testing policy.[1] Id. at ¶¶ 12, 20–21. At Amazon's direction, Miller appeared at Amazon's Carlisle facility and submitted an oral fluid specimen for drug testing ("Miller's oral fluid specimen"). Id. at ¶¶ 13, 20. Miller's oral fluid specimen was sent to Quest Diagnostics for testing. (Complaint, ¶ 13). Upon receipt of Miller's oral fluid specimen, Quest Diagnostics tested the specimen as instructed, and on July 19, 2020, accurately reported the specimen positive for the presence of marijuana above the designated cut-off levels to the Medical Review Officer ("MRO")[2] designated by Amazon to review and interpret the results. Id. at ¶¶ 15, 20.

---

[1] Miller alleges that, contrary to information provided by Amazon in its Position Statement in the administrative proceeding before the Pennsylvania Human Relations Commission, his "drug test was on July 21, 2020 at 6:00 P.M." (Complaint, ¶ 22). Although irrelevant to the legal and factual deficiencies of his claims, Quest Diagnostics's records demonstrate that Miller submitted his oral fluid specimen on July 14, 2020 and that it reported its test results on July 19, 2020. Quest Diagnostics has no record of a specimen submitted by Miller on July 21, 2020 or that was performed or reported on July 21, 2020.

[2] Pennsylvania does not have a general workplace drug testing statute. However, federal drug testing regulations are instructive in defining the roles of the various actors involved in forensic workplace drug testing. An MRO is a licensed physician designated by an employer to receive and review laboratory test results generated by an employer's drug testing program. As part of the verification interview for a positive test result under federal drug testing regulations, the MRO receives and considers evidence or information provided by the employee to determine whether a legitimate medical explanation exits for a non-negative laboratory result. (Complaint, ¶¶ 20–21); see also 49 C.F.R. §§ 40.137(b)–(c), 40.141. Under the federal program, the MRO and testing laboratory must be independent entities. See 49 C.F.R. §§ 40.101, 40.125 (prohibiting financial relationship between laboratory and MRO). Here, Amazon's MRO and Quest Diagnostics were distinct entities, charged with different responsibilities in the testing process.

Miller's marijuana positive test result is consistent with the medical marijuana he was using to treat his mental health conditions.[3] (Complaint, ¶¶ 1, 8). Under its workplace drug testing policy, Amazon accepts medical marijuana as a legitimate medical explanation for marijuana positive test results.[4] *Id*. at ¶ 18. Miller alleges that, although he voluntarily told numerous Amazon employees about his medical marijuana use, on July 21, 2020, Amazon declined to his application for a full-time position based on the results of his drug test. *Id*. at ¶¶ 9, 14, 13, 15.

Miller subsequently filed a charge of employment discrimination with the Pennsylvania Human Relations Commission alleging Amazon's decision was wrongful. (Complaint, ¶ 19). According to Amazon's position statement, on July 19, 2020, Amazon's MRO attempted to interview Miller regarding the confirmed laboratory test result. *Id*. at ¶ 20. As part of the verification process, a prospective employee is permitted to provide documentation to the MRO demonstrating a legitimate medical explanation for confirmed positive laboratory test results. *Id*. at ¶ 21. Miller however, apparently failed to respond to the MRO's attempt to contact him, and Amazon declined to hire him. *Id*. at ¶¶ 15, 20.

On March 1, 2021, Miller filed this lawsuit against Amazon and Quest Diagnostics. Miller brings claims against Quest Diagnostics for: (1) violating section 10231.2103(b) of the MMA prohibiting discrimination by employers; (2) wrongful termination in violation of public policy based on section 10231.2103(b) of the MMA; (3) breach of contract/implied covenant of good faith and fair dealing; (4) intrusion on seclusion; and (5) civil conspiracy.

---

(Complaint, ¶ 21). However, Miller argues that Amazon's use of an MRO, who is typically an independent physician, was somehow inappropriate or unlawful. As discussed *infra*, Miller's contentions are baseless.

[3] Miller alleges he was taking medical marijuana for anxiety and depression, as well as chronic Post Traumatic Stress Disorder ("PTSD"). (Complaint, ¶ 8).

[4] Although Miller characterizes his medical marijuana certification as a prescription, (Complaint, ¶¶ 40–42), his use of marijuana is not a prescription, but instead a certification under Pennsylvania law. 35 P.S. § 10231.303.

The majority of Miller's claims arise under a MMA provision that is directed solely to employers. Miller apparently contends, notwithstanding Amazon's use of an independent MRO to interview donors regarding analytically-positive test results, that Quest Diagnostics should have taken some unspecified action after Miller told the person who collected his oral fluid specimen that he had a medical marijuana card. (Complaint, ¶ 13). There is no factual or legal basis for any of Miller's claims—which are not supported by the express language of the MMA. Miller fails to state any claim for which relief may be granted against Quest Diagnostics, and his claims against it should be dismissed with prejudice.

### III.
### LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a Complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). To survive dismissal under Rule 12(b)(6), Miller's Complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the facts pled "allow[ ] the court to draw the reasonable inference that [a] defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id*. at 679 (alteration in original) (quoting FED. R. CIV. P. 8(a)(2)). The Court need not assume a plaintiff can prove facts that were not alleged in the complaint, *City of Pittsburgh v. W. Penn Power Co.*, 147 F.3d 256, 263 & n.13 (3d Cir. 1998), or credit a complaint's "bald assertions" or "legal conclusions." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997). In determining whether a plaintiff has shown a "plausible claim for relief," the Court must conduct a "context specific" inquiry that requires it to

"draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. Miller's claims against Quest Diagnostics fail to meet this standard.

## IV.
## LEGAL ARGUMENT

A. **Plaintiff's Pennsylvania Medical Marijuana Act Claims Do Not Apply to Quest Diagnostics and His Putative Public Policy Claim Fails On Its Face.**

Miller alleges that "Defendants"[5] violated the anti-discrimination provision of Pennsylvania's Medical Marijuana Act ("MMA"), 35 P.S. § 10231.2103(b), by refusing to hire him because of his marijuana-positive drug test result. (Complaint, ¶ 29). The MMA, enacted by the Pennsylvania Legislature in 2016, permits the use of specified amounts of marijuana for enumerated medical conditions upon certification by a registered physician. 35 P.S. § 10231.303.[6] The MMA also provides various protections for patients authorized to receive and use medical marijuana in accordance with the MMA. 35 P.S. § 10231.2103. One of those provisions, section 2103(b), prohibits discrimination by an **employer** against an employee "solely on the basis of such employee's status as an individual who is certified to use medical marijuana." 35 P.S. § 10231.2103(b)(1).[7] Miller's claim against Quest Diagnostics arises out of this provision and thus is meritless.

---

[5] Throughout his Complaint, Miller improperly references "Defendants" generally in his factual allegations without distinguishing between Quest Diagnostics or Amazon. *See Warren v. Luzerne Cty.*, No. 3:CV-09-0946, 2010 WL 521130, at *10 n.5 (M.D. Pa. Feb. 9, 2010) (noting pleading suffered from substantial defect where it failed to distinguish among defendants, noting collective treatment of "Defendants" was improper).

[6] Marijuana remains illegal under federal law. 21 U.S.C. § 812; 21 C.F.R. § 1308.11.

[7] "No employer may discharge, threaten, refuse to hire or otherwise discriminate or retaliate against an employee regarding an employee's compensation, terms, conditions, location or privileges solely on the basis of such employee's status as an individual who is certified to use medical marijuana." 35 P.S. § 10231.2103(b)(1). An implied private right of action to enforce this provision against employers has been recognized by this Court. *Hudnell v. Thomas Jefferson Univ. Hosps., Inc.*, No. CV 20-01621, 2020 WL 5749924, at *6 (E.D. Pa. Sept. 25, 2020) ("the Court predicts the Pennsylvania Supreme Court would find that the General Assembly 'intended to create. . . . by implication, a private cause of action'").

Section 2103(b) of the MMA expressly regulates the conduct of employers. *See Hudnell*, 2020 WL 5749924, at *6 (noting Section 2103 "regulates employer conduct"). Despite the plain language of section 2103(b), Miller asks this Court to broaden the scope of section 2103(b) to include non-employers such as testing laboratories. Courts, however, are bound by plain statutory language and "should not insert words into the Act that are plainly not there." *Frazier v. Workers' Comp. Appeal Bd. (BAYADA Nurses, Inc.)*, 52 A.3d 241, 245 (Pa. 2012) (citing *Pa. Sch. Bds. Ass'n, Inc. v. Pub. Sch. Emps. Ret. Bd.*, 863 A.2d 432, 436, 439 (Pa. 2004); 1 Pa.C.S. § 1921(b)). As a matter of law, the provision of the MMA relied upon by Miller is inapplicable to Quest Diagnostics.

Additionally, as noted in *Laidacker, Jr. v. Berwick Offray, LLC*, the inclusion of specific language in the MMA means that the Pennsylvania Legislature intended to exclude other entities not mentioned in the MMA. No. 726 OF 2019, 2020 WL 3410881, at *4 (Pa. Com. Pl. Jan. 2, 2020). Quest Diagnostics was not Miller's employer.[8] (Complaint, ¶¶ 1–3, 7, 25). Quest Diagnostics is a laboratory services provider offering employers, such as Amazon, forensic workplace drug testing services. *Id.* at ¶ 3.[9] The MMA's nondiscrimination provision is explicitly directed to employers, and the rules of statutory construction dictate that others not specifically mentioned, such as workplace drug testing laboratories, are not subject to the provision.

---

[8] Although Miller conclusorily alleges that Quest Diagnostics "acted in concert, conspiracy, and/or in furtherance of Amazon's actions in violation of Pennsylvania's MMA," (Complaint, ¶ 26), as demonstrated *infra*, Miller has not adequately alleged the existence of any "civil conspiracy" in this case, and his putative claim that Quest Diagnostics somehow conspired with Amazon to violate the MMA is simply specious.

[9] Quest Diagnostics's testing of Miller's oral fluid specimen is no evidence that Quest Diagnostics had any control over the terms or conditions of Miller's prospective employment. *See, e.g., Millman v. CVS Caremark*, No. CIV.A 15-0134, 2015 WL 6760204, at *9–11 (E.D.N.Y. Nov. 5, 2015) (dismissing state and federal employment discrimination claims against third party administrator in charge of administering employer's drug testing program noting that "[w]hile CVS may have relied on the results of the screening in revoking the offer of employment, there is nothing to indicate that First Advantage exercised any control over that decision").

In addition to his statutory MMA claim, Miller also appears to attempt to assert a claim against Quest Diagnostics for wrongful discharge based on section 2103(b) in violation of Pennsylvania public policy. (Complaint, ¶¶ 39–44). The apparent public policy exception relied upon by Miller amending the general Pennsylvania rule that an at-will employee may be terminated without reason appears to be a prohibition that an employee cannot be discharged when specifically prohibited by statute. *See Parker v. Sch. Dist. of Phila.*, 346 F. Supp. 3d 738, 752 (E.D. Pa. 2018) (listing exceptions). However, there is no dispute that Quest Diagnostics was not Miller's employer and, therefore, no wrongful discharge claim can exist as to Quest Diagnostics. *See*, *e.g.*, *Hrosik v. Latrobe Steel Co.*, No. CIV.A. 94-1361, 1995 WL 456212, at *6 (W.D. Pa. Apr. 25, 1995) (dismissing plaintiff's claims against individual defendants for wrongful discharge where plaintiff did not allege individual defendants were his employer, noting that "[a] wrongful discharge claim exists only against an employee's employer"). The plain language of the MMA's antidiscrimination provision demonstrates that Miller's statutory claim fails to state a cause of action against Quest Diagnostics. *See* 35 P.S. §§ 10231.2103(b) & 510. Furthermore, Miller's public policy claim based upon the same provision fails because it is undisputed Quest Diagnostics was not Miller's employer.

**B.     Miller's Breach Of Implied Covenant Of Good Faith And Fair Dealing And Breach Of Contract Claims Fail As A Matter Of Law.**

Miller alleges that Quest Diagnostics "violated a verbal or written contract and/or agreement to conduct a thorough, fair, and impartial drug test when its employees, officer[s], and/or examiners intentionally misinformed and/or otherwise caused his termination." (Complaint, ¶ 35). Miller also appears to assert a "good faith and fair dealing" claim against Quest

7

Diagnostics by alleging it "breached its Hippocratic Oath" when it "falsely" reported to Amazon that he failed his drug test.[10] *Id.* at ¶ 36. Miller's claims are baseless.

Miller's apparent claim that Quest Diagnostics breached some implied covenant of good faith and fair dealing arises out of Amazon's refusal to extend him at-will employment. (Complaint, ¶¶ 34, 35). That claim fails as a matter of law.[11] *Spyridakis v. Riesling Grp., Inc.*, 398 F. App'x 793, 800 (3d Cir. 2010) (affirming dismissal of claim for breach of implied duty of good faith and fair dealing in at-will employment relationship); *Natale v. Winthrop Res. Corp.*, Civ. A. No. 07-4686, 2008 WL 2758238, at *11 (E.D. Pa. July 9, 2008) (noting a claim for breach of duty of good faith due to termination of at-will employee is "unequivocally barred under Pennsylvania law"). To the extent that Miller alleges that Quest Diagnostics breached some contractual obligation owed to him, that claim also fails because Miller has not identified any contract, written or verbal—express or implied, between him and Quest Diagnostics.

To state a breach of contract claim, Miller must allege facts to establish: (1) the existence of a contract, including its essential terms; (2) a breach of a duty imposed by the contract; and (3) resultant damages. *Ware v. Rodale Press, Inc.*, 322 F. 3d 218, 225 (3d Cir. 2003) (citing

---

[10] Miller's contentions regarding the Hippocratic Oath do not state a viable claim. The Hippocratic Oath is an ethical creed governing physicians. Even if the Hippocratic Oath applied to non-clinical, workplace drug testing, which it does not, there is no private right of action for violation of the Hippocratic Oath. Rather, such a claim would, arguably, be subsumed in a medical negligence claim. Moreover, the Hippocratic Oath does not contain a clear mandate of public policy on which a cause of action may be premised. *See Pierce v. Ortho Pharm. Corp.*, 417 A.2d 505, 514 (N.J. 1980) (concluding that the Hippocratic Oath "does not contain a clear mandate of public policy" upon which a cause of action may be based). Finally, even if it were applicable in this context, there is nothing in the Hippocratic Oath that would require Quest Diagnostics to make employment determinations based upon confirmed-positive workplace drug testing results.

[11] To the extent Miller alleges that his failure to obtain a full-time position at Amazon violates public policy and thereby constitutes a breach of the duty of good faith, that claim fails because Miller has not set forth a viable claim for a violation of public policy. *Spyridakis v. Riesling Grp.*, Inc., No. CIV. A. 09-1545, 2009 WL 3209478, at *11 (E.D. Pa. Oct. 6, 2009) (dismissing breach of duty of good faith claim where plaintiff's wrongful termination in violation of public policy claim failed), *aff'd*, 398 F. App'x 793 (3d Cir. 2010).

*CoreStates Bank, N.A. v. Cutillo*, 723 A.2d 1053, 1058 (Pa. Super. Ct. 1999)).  Miller does not identify any contract between himself and Quest Diagnostics—and none exists.

To the extent Miller's claims are based on Quest Diagnostics's agreement with Amazon to perform workplace drug testing services, Miller is not a party to that agreement and that claim fails.  *Goldfish Shipping, S.A. v. HSH Nordbank AG*, No. CIV. A. 07-3518, 2008 WL 4809410, at *6–7 (E.D. Pa. Nov. 3, 2008) (dismissing breach of contract claim where plaintiff not a party to contract and had not identified any relationship from which any contractual obligations could have arisen).  Furthermore, the workplace drug testing agreement between Quest Diagnostics and Amazon does not require—or even permit—Quest Diagnostics to make employment determinations for positive drug test results. (Complaint, ¶ 21).  Rather, the determination whether Miller articulated a legitimate reason for his accurate drug test result rests with the MRO and any employment decisions flowing therefrom rest with Amazon.  *Id*.

Absent Miller's identification of a specific, enforceable contractual obligation owed to him by Quest and upon which he bases his claim, Miller's contract claims fail to state a claim for which relief may be granted and should be dismissed.  *David v. Neumann Univ.*, 187 F. Supp. 3d 554, 559, 560–61 (E.D. Pa. 2016) (dismissing breach of contract claim and good faith and fair dealing claim where plaintiff failed to identify specific contractual duty imposed on defendant).

C.  **Miller's Intrusion On Seclusion Claim Fails As A Matter Of Law.**

Miller also brings an invasion of privacy (intrusion on seclusion) claim against Quest Diagnostics. (Complaint, ¶¶ 45–48).  Specifically, Miller contends that "Defendants implemented no exclusions for his use of prescribed medications and thus revealed very publicly to [his] employer"[12] that: (1) he failed a drug test; or (2) he takes medical marijuana.  *Id*. at ¶ 46.  To state

---

[12] However medical marijuana is defined, it is indisputable that it is not a "prescribed medication."

9

a claim for intrusion upon seclusion, Miller must allege that there was an intentional intrusion by Quest Diagnostics on the seclusion of his private concerns that was substantial and highly offensive to a reasonable person. *Burger v. Blair Med. Assoc., Inc.*, 964 A.2d 374, 376 (Pa. 2009). However, "an actor commits intentional intrusion only if he or she believes, or is substantially certain, that he or she lacks necessary legal or personal permission to commit intrusive act." *O'Donnell v. United States*, 891 F.2d 1079, 1083 (3d Cir. 1989) (finding district court did not err in granting summary judgment for defendant on intrusion on seclusion claim, where defendant released psychiatric treatment records to patient's employer without authorization). Miller's claim fails.

Miller specifically concedes that he informed Amazon on multiple occasions that he was taking medical marijuana and that Amazon permits medical marijuana use as a legitimate medical explanation. (Complaint, ¶¶ 18, 9, 14, 16). As a threshold matter, Miller's claim therefore fails because **he** informed Amazon of his status as an individual certified to use medical marijuana.[13] More importantly, however, Quest Diagnostics identified Miller's oral fluid specimen as positive for marijuana metabolite and allegedly obtained the information regarding Miller's medical marijuana user status in connection with its performance of workplace drug testing services on behalf of Amazon. *Id*. at ¶ 13. On the face of Miller's Complaint, there is no factual basis for a

---

[13] To the extent Miller asserts an invasion of privacy claim based on unreasonable "publicity" given to his private life, *see* RESTATEMENT (SECOND) OF TORTS § 652D, this claim also fails as a matter of law. First, Miller himself informed Amazon that he was a medical marijuana user. (Complaint, ¶ 13). Second, the term "publicity," as an element of an invasion of privacy claim, "means that the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge." *Curran v. Children's Serv. Ctr. of Wyoming Cnty, Inc.*, 578 A.2d 8, 12 (Pa. Super. 1990) (citing RESTATEMENT (SECOND) OF TORTS, § 652D, comment a). Quest Diagnostics reported Miller's test results only to the MRO designated by Amazon to receive and review such results, and there is no allegation that it communicated Miller's drug test results to the public or to "numerous" persons. *See Burger v. Blair Med. Assocs.*, 964 A.2d 374, 379 (Pa. 2009) (noting that disclosure of drug use to employer did not constitute "publicity" and thus was not substantially certain to become public knowledge). Miller has not—and cannot—allege Quest Diagnostics communicated his test result publicly and such a claim, to the extent made, fails.

claim that Quest Diagnostics obtained that information through any "unwarranted acquisition," and Miller's intrusion on seclusion claim fails. *See Burger*, 964 A.2d at 376 (intrusion on seclusion claim failed where doctor obtained information in treatment of plaintiff and reported results to employer).

Miller also appears to contend that Amazon's policy of using an MRO to interview donors regarding legitimate medical explanations for laboratory-positive test results "violates medical privacy considerations and intentionally or disparately impacts employees, including those using medical marijuana, as it wrongly subjects employees to termination, claims of failed drug tests, exposure of medical conditions, and other embarrassment, humiliation, and harms." (Complaint, ¶ 23). To the extent Miller complains of Amazon's use of an MRO as a basis for an "intrusion upon seclusion" claim, however, this contention is specious. First, there is no claim that Quest Diagnostics retained or has any involvement in the selection of the MRO or the terms and conditions under which the MRO performs services for Amazon. As such, even if such a claim is cognizable as to Amazon, it clearly does not implicate or involve Quest Diagnostics in any way. Second, even assuming that some type of claim could exist against Amazon or Quest Diagnostics in connection with the MRO's services, at least one district court in Pennsylvania has considered the issue of an invasion of privacy claim based on an employer's use of an MRO and correctly concluded that such policy is not an invasion of privacy. *Wilkinson v. Marvin E. Klinger, Inc.*, No. 4:15-cv-01916, 2017 U.S. Dist. LEXIS 199497, at * 29–31 (M.D. Pa. Dec. 5, 2017) (finding procedure utilizing MRO did "not unduly intrude upon an employee's seclusion"). Indeed, the purpose of an MRO is to protect the privacy of employees by limiting the amount of medical history information received by an employer. Accordingly, Miller's invasion of privacy claims should be dismissed without leave to amend.

E.   **Miller's Civil Conspiracy Allegation Fails As A Matter Of Law.**

Finally, Miller asserts civil conspiracy by Quest Diagnostics. (Complaint, ¶¶ 49–52). The gravamen of this claim is Miller's contention that Quest Diagnostics "conspired and/or unlawfully furthered" Amazon's violation of the MMA by its "fail[ure] or refus[al] to take note and account of [his] status as a certified/licensed medical marijuana user." *Id.* at ¶ 50. To state a cause of action for civil conspiracy, Miller must allege facts that demonstrate: "(1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose; (2) an overt act done in pursuance of the common purpose; and (3) actual legal damage." *DePuy Synthes Sales, Inc. v. Globus Med., Inc.*, 259 F. Supp. 3d 225, 247–48 (E.D. Pa. 2017) (citing *Gen. Refractories Co. v. Fireman's Fund Ins. Co.*, 337 F.3d 297, 313 (3d Cir. 2003)). In addition, Miller must demonstrate that Quest Diagnostics and Amazon acted with malice, *i.e.*, with intent to injure Miller, and that any such unlawful intent was unjustified. *Corrigan v. Methodist Hosp.*, 853 F. Supp. 832, 837 (E.D. Pa. 1994). Miller's conspiracy allegations are baseless as a matter of law.

As demonstrated above, each of Miller's underlying claims against Quest Diagnostics—including his statutory MMA claim and his wrongful termination in violation of public policy claims—fail as a matter of law. Miller's civil conspiracy claims therefore also fail. *Reese v. Pook & Pook, LLC*, 158 F. Supp. 3d 271, 292 (E.D. Pa. 2016) ("Ultimately, only a finding that the underlying tort has occurred will support a claim for civil conspiracy.") (internal quotations omitted); *see also Griffin v. Municipality of Kingston*, 453 F. App'x 250, 255 (3d Cir. 2011) (noting that without a cause of action for the act of wrongful discharge, there can be no cause of action for civil conspiracy to commit that act).

Moreover, Miller may not generally allege malice and a meeting of the minds to state a viable conspiracy claim. *Deangelo v. Brady*, 185 F. App'x 173, 175 (3d Cir. 2006); *St. Clair v.*

*Citizens Fin. Grp.*, 340 F. App'x 62, 65 (3d Cir. 2009) (citing *Bell Alt. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  Miller alleges only that Quest Diagnostics "conspired and/or unlawfully furthered" Amazon's conduct or decision to terminate him.  (Complaint, ¶ 51).  This conclusory allegation is insufficient on its face.  *Adams v. Teamsters Local 115*, 214 F. App'x 167, 175–76 (3d Cir. 2007) (affirming dismissal of civil conspiracy claim where plaintiffs' allegations of conspiracy were conclusory) (citing *Loftus v. SEPTA*, 843 F. Supp. 981, 987 (E.D. Pa. 1994) ("[W]hile the pleading standard under Rule 8 is a liberal one, mere incantation of the words 'conspiracy' or 'acted in concert' does not talismanically satisfy the Rule's requirements")); *Lynn v. Christner*, 184 F. App'x 180, 184 (3d Cir. 2006) (conclusory allegations of "concerted action," without allegations of fact that reflect joint action, are insufficient) (quoting *Abbott v. Latshaw*, 164 F.3d 141, 148 (3d Cir. 1998)).  Even accepting as true for sake of argument that the MMA restricted Amazon's right to refuse Miller's application for at-will employment on the facts of this case, it is undisputed that Quest Diagnostics tested Miller's oral fluid specimen and accurately reported the results to Amazon's MRO pursuant to contractual obligations owed to Amazon. Miller alleges no facts supporting any claim of conduct by Quest Diagnostics not required or encompassed by these contractual duties.

More importantly, "proof of malice, *i.e.*, an intent to injure" is essential to a civil conspiracy claim.  *DePuy Synthes Sales, Inc. v. Globus Med., Inc.*, 259 F. Supp. 3d 225, 248 (E.D. Pa. 2017) (citing *Thompson Coal Co. v. Pike Coal Co.*, 412 A.2d 466, 472 (Pa. 1979)).  "Malice requires an allegation that the sole purpose of the conspiracy was to injure the plaintiff, and that this intent was without justification." *Id*. (citing *Doltz v. Harris & Assocs.*, 280 F. Supp. 2d 377, 389 (E.D. Pa. 2003)).  On the face of Miller's Complaint, Quest Diagnostics acted at all times in furtherance of its contractual obligations and in the provision of professional services when it tested and

13

reported (accurately) his specimen results. (Complaint, ¶¶ 3, 21). The fact that Quest Diagnostics performed and reported its test results to Amazon pursuant to its contractual obligations to provide workplace drug testing services expressly negates any alleged intent by Quest Diagnostics to injure Miller. *DePuy Synthes Sales*, 259 F. Supp. 3d at 248 ("[A] showing that a person acted for professional reasons, and not solely to injure the plaintiff, negates a finding of malice") (citing *Sarpolis v. Tereshko*, 26 F. Supp. 3d 407, 423–24 (E.D. Pa. 2014), *aff'd*, 625 F. App'x 594 (3d Cir. 2016)); *Giordano v. Claudio*, 714 F. Supp. 2d 508, 534 (E.D. Pa. 2010) (same). Miller fails to state a viable civil conspiracy claim against Quest Diagnostics and his conspiracy count should be dismissed without leave to amend. *See DePuy Synthes Sales*, 259 F. Supp. 3d at 248–49.

## V.
## CONCLUSION

Section 2103(b) of the MMA only regulates the conduct of employers, so Miller's claim under that provision fails as to Quest Diagnostics. Similarly, Miller's "public policy" claim against Quest Diagnostics based on an exception to the at-will employment doctrine also fails because Quest Diagnostics was not his employer. Miller's putative breach contract claims fail on their face because he was a prospective at-will employee and was not a party to any contract with Quest Diagnostics. Miller's invasion of privacy claim is similarly baseless. Finally, Miller's civil conspiracy allegations fail. As a matter of law, Miller's claims against Quest Diagnostics should be dismissed without leave to amend.

Respectfully submitted,

**FAEGRE DRINKER BIDDLE & REATH LLP**

*/s/ David J. Woolf*
DAVID J. WOOLF
One Logan Square, Suite 2000
Philadelphia, PA  19103
Telephone:  215-988-2614
Email:  david.woolf@faegredrinker.com

RENÉE M. DUDEK
222 Delaware Avenue, Suite 1410
Wilmington, DE  19801
Telephone: 302-467-4290
Email: renee.dudek@faegredrinker.com

-and-

D. FAYE CALDWELL, *Pro Hac Vice*
Caldwell Everson PLLC
2777 Allen Parkway, Suite 950
Houston, TX 77019
Telephone: 713-654-3000
Email:  fcaldwell@caldwelleverson.com

**ATTORNEYS FOR DEFENDANT QUEST DIAGNOSTICS CLINICAL LABORATORIES, INC.**

## CERTIFICATE OF SERVICE

I hereby certify that on the 6th day of April, 2021 I electronically filed the foregoing with the Clerk of the Court using CM/ECF system, which will send notification of such filing to the following:

>Christopher J. Delgaizo
>Derek Smith Law Group PLLC
>1835 Market Street, Suite 2950
>Philadelphia, PA  19103
>Email:  chris@dereksmithlaw.com
>
>Tyson Y. Herrold
>Baker & Hostetler LLP
>2929 Arch Street
>Cira Centre 12th Fl.
>Philadelphia, PA  19104
>Email: therrold@bakerlaw.com

>*/s/ David J. Woolf*