IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NATHAN MILLER, | : | CIVIL ACTION |
| | : | NO. 21-944 |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| AMAZON.COM SERVICES, INC., et al., | : | |
| | : | |
| Defendants. | : | |

M E M O R A N D U M

EDUARDO C. ROBRENO, J. June 11, 2021

## I. INTRODUCTION

Plaintiff Nathan Miller brings this civil action for violations of Pennsylvania's Medical Marijuana Act, breach of contract and the implied covenant of good faith and fair dealing, violation of public policy, negligence, and civil conspiracy against Defendants Amazon.com Services, Inc. ("Amazon") and Quest Diagnostics Clinical Laboratories, Inc. ("Quest") in relation to the termination of Plaintiff's employment and/or refusal to hire on the basis of an alleged failed drug test. In response, Amazon filed a partial motion to dismiss, while Quest filed a full motion to dismiss.

For the reasons explained below, Quest's motion to dismiss will be granted, and Amazon's partial motion to dismiss will be denied.

## II. FACTUAL BACKGROUND[1]

Plaintiff worked from April 16, 2020, to July 21, 2020, for Amazon as a Seasonal Fulfillment Associate. More specifically, Plaintiff worked full-time as a "Picker" at Amazon's Fulfillment Center in Carlisle, Pennsylvania, earning $15.05 an hour. Plaintiff worked the third shift (i.e., 6:15 p.m. to 4:45 a.m., Sunday through Wednesday). Plaintiff's seasonal employment position with Amazon was temporary, but Amazon employees allegedly told Plaintiff during orientation that the seasonal role would last eleven months. Seasonal employees are eligible for re-employment after the season ends.

Plaintiff suffers from various mental health conditions including anxiety, depression, and chronic Post-Traumatic Stress Disorder (PTSD), which require him to take physician-recommended medical marijuana, and Plaintiff has a valid certification and license to do so. Plaintiff informed his direct supervisor and assistant supervisors that he has a license for medical marijuana.

As a Picker, Plaintiff consistently scored in excess of his pick rate or quota, and was not required to use machinery or heavy equipment of any kind. Within months of his employment, Amazon employees and supervisors encouraged Plaintiff to apply

---

[1] The facts alleged by Plaintiff and asserted herein are accepted as true and viewed in the light most favorable to Plaintiff.

for a permanent position with Amazon. On or about July 5, 2020, Plaintiff applied for a full-time permanent position titled "PA Amazon Team Member," which would result in an increase in pay and benefits. However, prior to hire or transfer to the permanent position, Plaintiff was required to take a drug test.

The drug test was administered by Quest on Amazon's Carlisle premises. Plaintiff alleges that Amazon and Quest entered into contracts and agreements regarding the processing and reporting of employee drug test results. At the drug test, Plaintiff informed a Quest employee and Amazon Human Resources employee that he is a licensed user of medical marijuana and showed them his license. Throughout the examination process, Plaintiff continuously informed and showed each and every person with whom he interacted that he has a medical marijuana license and that marijuana would therefore show up in his test.

On July 21, 2020, Plaintiff received a phone call from Anthony, an Amazon Human Resources employee. Anthony informed Plaintiff that Plaintiff had failed the drug test due to marijuana and was terminated. The termination ended Plaintiff's seasonal position eight months early. Plaintiff was also not hired or considered for the permanent PA Amazon Team Member position.

Plaintiff told Anthony that he has a license for medical marijuana and explained the foregoing efforts he made at the

test to make people aware. However, Anthony informed Plaintiff that the termination was already processed in the system, the information was with the corporate office, and there was nothing they could do to reverse the decision.

Plaintiff appealed his termination through Amazon's procedures. On or about July 27, 2020, Plaintiff received an email from Anthony stating: "When appealing a termination of this nature, the process in place requires you to reach out directly to Quest Diagnostics to notify them of your intent to appeal the results of the test. They will work with you on taking the necessary steps." Am. Compl. ¶ 26, ECF No. 23. The next day, Plaintiff called Quest to explain the situation. Quest informed Plaintiff there was nothing they could do and that he should contact Amazon. Plaintiff called Amazon on the same day (July 28, 2020) to inform them of his conversation with Quest, but was given little if any assistance with moving forward or pursuing an appeal of Amazon's termination decision.

Plaintiff filed a Charge of Discrimination with the Pennsylvania Human Relations Commission about his termination, and an investigation was briefly conducted. During the Administrative Investigation, Amazon submitted a Position Statement claiming that (1) Plaintiff underwent the drug test on or about July 14, 2020; (2) the test result came back positive on July 19, 2020; (3) per procedure, a Medical Review Officer

("MRO") from Amazon attempted to contact Plaintiff on July 19, 2020, for an explanation of the test results; and (4) when no response was forthcoming, the decision to terminate was made by Amazon Human Resources on July 21, 2020. Amazon further claimed that per their procedures, Quest is to take no notice of a license or certification to use medical marijuana, and that it is the employee's responsibility to report said license when called by the MRO about a positive drug test. In contrast to the foregoing, Plaintiff allegedly has documentary evidence that the drug test occurred on July 21, 2020, at 6:00 p.m.; that Plaintiff called Amazon on July 21 and 22, 2020; and that Plaintiff was terminated effective July 22, 2020.

Based on these facts and allegations, Plaintiff included five counts in his Amended Complaint: I) Violation of Pennsylvania's Medical Marijuana Act against Amazon; II) Breach of Contract and the Implied Covenant of Good Faith and Fair Dealing against Amazon; III) Violation of Public Policy against Amazon; IV) Negligence against Quest; and V) Civil Conspiracy against Quest. Quest filed a motion to dismiss both counts against it (i.e., Counts IV-V) for failure to state a claim, while Amazon filed a partial motion to dismiss, requesting dismissal of Count II only for failure to state a claim. These motions are now before the Court.

**III. LEGAL STANDARD**

A party may move to dismiss a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). When considering such a motion, the Court must "accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the non-moving party." DeBenedictis v. Merrill Lynch & Co., 492 F.3d 209, 215 (3d Cir. 2007) (quoting Rocks v. City of Philadelphia, 868 F.2d 644, 645 (3d Cir. 1989)).

To withstand a motion to dismiss, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). This "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. Although a plaintiff is entitled to all reasonable inferences from the facts alleged, a plaintiff's legal conclusions are not entitled to deference, and the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986) (first citing Briscoe v. LaHue, 663 F.2d 713, 723 (7th Cir. 1981), aff'd on other grounds, 460 U.S. 325 (1983); and then citing 2A James Wm. Moore et al., Moore's Federal Practice ¶ 12.07, at 12-64 & n.6 (1985)).

The pleadings must contain sufficient factual allegations so as to state a facially plausible claim for relief. See, e.g., Gelman v. State Farm Mut. Auto. Ins. Co., 583 F.3d 187, 190 (3d Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). In deciding a Rule 12(b)(6) motion, the Court limits its inquiry to the facts alleged in the complaint and its attachments, matters of public record, and undisputedly authentic documents if the complainant's claims are based upon these documents. See Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994); Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).

## IV. DISCUSSION

### A. Quest's Motion to Dismiss

#### 1. Negligence

To properly state a claim for negligence, Plaintiff must allege: (1) the existence of a duty or obligation recognized by law requiring Quest to conform to a certain standard of conduct; (2) a failure on the part of Quest to conform to that duty, or a breach thereof; (3) a causal connection between Quest's breach and the resulting injury; and (4) actual loss or damage suffered

by Plaintiff. See Gillen v. Boeing Co., 40 F. Supp. 3d 534, 537 (E.D. Pa. 2014) (citing R.W. v. Manzek, 888 A.2d 740, 746 (Pa. 2005)).

Quest argues that Plaintiff fails to allege the first three elements of negligence because Quest owes no duty to Plaintiff aside from accurate testing, there is no allegation that the test was not accurate, and there was no proximate cause since Amazon was already aware of Plaintiff's status as a certified medical marijuana user. Plaintiff does not dispute the accuracy of the test result, nor that the result was accurately conveyed to Amazon. However, Plaintiff argues that Quest's duty of care extends beyond that to a duty of reasonable care in processing and reporting accurate results, and that Quest should have reported to Amazon that Plaintiff held a Pennsylvania medical marijuana license. Whether such a duty exists is a question of law for the Court to decide. See Manzek, 888 A.2d at 746-47.

The Pennsylvania Supreme Court has not answered this particular question yet. The most analogous case is Sharpe v. St. Luke's Hospital, 821 A.2d 1215 (Pa. 2003), in which the Pennsylvania Supreme Court held that a hospital which collected a drug sample from an employee at the employer's request owed the employee "a duty of reasonable care with regard to collection and handling of her urine specimen for the employment-related drug testing." Id. at 1221. The court in

Sharpe utilized five factors in making their determination concerning a hospital's duty of reasonable care: "(1) the relationship between the parties; (2) the social utility of the [defendant's] conduct; (3) the nature of the risk imposed and foreseeability of the harm incurred; (4) the consequences of imposing a duty upon the [defendant]; and (5) the overall public interest in the proposed solution." Id. at 1219 (quoting Althaus v. Cohen, 756 A.2d 1166, 1169 (Pa. 2000)).[2]

In Warshaw v. Concentra Health Services, 719 F. Supp. 2d 484 (E.D. Pa. 2010), a case containing somewhat similar facts to the instant case, the court extended the analysis in Sharpe and found that a drug testing company's duty of care extends not only to the collection and handling of the test, but also to the processing and reporting of the test to the employer. Id. at 506. In Warshaw, the plaintiff had attention deficit hyperactivity disorder (ADHD) and took methamphetamines that caused a positive test result. Id. at 489-90. The court found that "a reasonable jury could find that [Defendant] was negligent in reporting the initial positive result after expressly refusing to allow plaintiff to provide information

[2] The Pennsylvania Supreme Court first articulated these factors in Althaus v. Cohen, 756 A.2d 1166, 1169 (Pa. 2000). For the sake of clarity, we refer to these factors as the Sharpe factors since it is the Pennsylvania Supreme Court's decision in Sharpe that is at issue in this case.

about the prescription drug that caused the positive result.” Id. at 507. Applying the five-factor test, the court found that:

> First, as in Sharpe, the plaintiff “personally” went to the defendant, which “was aware of the purpose of the urine screening” and “should have realized that any negligence with respect to . . . that specimen could harm [plaintiff’s] employment.” Sharpe’s view of the second and third Althaus factors also applies here: “[W]hile [defendant’s] participation in the drug testing process certainly has social utility,” the harm to the plaintiff’s employment “would be a foreseeable consequence of a breach of the duty of reasonable care.” Fourth, like the Sharpe defendant, [the testing company] is the “entity. . . in the best position to ensure its non-negligent collection and handling” - and processing and reporting – “of the specimen, and thus, it possesses the ability to limit its liability by acting reasonably.”
> Finally, Sharpe held that “the increase in mandatory employment-related drug screening and the potential ramifications of” errors by drug testing companies “create a substantial public interest in ensuring that the medical facilities involved in the testing exercise a reasonable degree of care to avoid erroneous test results occurring because of negligence.” Although [the testing company] argues that its test result was technically accurate, Sharpe’s view of the public interest is easily extended to cover situations in which a drug test allegedly leads to the erroneous perception of illegal drug use. Accordingly, even though Sharpe concerned the collection and handling of a drug test, not the processing or reporting of that test, its analysis controls.

Id. at 505-06 (first, second, and third alterations in original) (citations omitted).

This Court respectfully disagrees with the Warshaw court’s application of the above five Sharpe factors as it relates to imposing a duty on a testing company to process and report

accurate test results of an individual who may have a legal excuse for their positive results. The Court predicts that the Pennsylvania Supreme Court, if presented with this question, would not extend and expand the Sharpe holding to impose a duty to report the existence of a current or prospective employee's Pennsylvania medical marijuana license to a current or prospective employer.[3]

As to the first factor, i.e., the relationship between the parties, Pennsylvania law prohibits discrimination by an employer against an employee "solely on the basis of such employee's status as an individual who is certified to use medical marijuana." 35 PA. Stat. and Cons. Stat. § 10231.2103(b)(1) (West 2021). Thus, it appears that Pennsylvania places the onus on the employer (i.e., Amazon, and not Quest) to take into account an employee's report that they are certified to use medical marijuana.[4]

---

[3] The Court recognizes that both current and prospective employees may need to be drug tested for a variety of reasons. For clarity's sake, and since the analysis applies equally to both, the Court will utilize "employee" and "employer" hereinafter, with the understanding that the terms may encompass both current and prospective employees and employers.

[4] "The concept of duty is rooted in public policy . . . ." Sharpe, 821 A.2d at 1219 (citing Althaus, 756 A.2d at 1169). Given that the Pennsylvania legislature has considered and enacted legislation concerning medical marijuana that does not impose the liability requested in this case, and that the Pennsylvania Supreme Court has not extended the duty described in Sharpe beyond the collection and handling of drug tests, this federal Court is reluctant to engage in such a major expansion of Pennsylvania tort liability without express authorization from the Pennsylvania Supreme Court or legislature.

The second factor, i.e., the social utility of the defendant's conduct, and the fourth factor, i.e., the consequence(s) of imposing a duty upon the defendant, also tilt in favor of Quest. While Quest's participation in the drug testing process has social utility, this utility does not extend to advising employers (i.e., Quest's clients) that the employee has acquired a Pennsylvania medical marijuana license. Given the varying and evolving laws on this subject across the country, Quest is not so situated as to know the existence and scope of cannabis laws in all fifty states.[5]

Moreover, this is in essence an inquiry as to who is in the best position to report that, despite the employee's positive drug test, the employee has a valid medical marijuana license. Given that employers may have differing standards for evaluating the drug tests of their employees depending on, inter alia, the nature of the job, whether the job is a federal, state, local, or private job, and where the job is located (which is particularly pertinent to this case, given that medical marijuana is not legal in all fifty states), it is unreasonable to impose a duty on an independent drug testing company to

---

[5] For example, an employee may be referred to a Quest facility in one state where medical marijuana is legal, such as Oklahoma, only to be tested for a job in another state where medical marijuana is not legal, such as Kansas. See State Medical Marijuana Laws, Nat'l Conf. St. Legislatures, https://www.ncsl.org/research/health/state-medical-marijuana-laws.aspx (June 9, 2021).

report that an employee holds a valid medical marijuana license in a particular state. Rather, the employee, who is the holder of the license, is in the best position to report the existence of the license to their employer, rather than relying on an intermediary to do so.

The third factor, i.e., the nature of the risk imposed and foreseeability of the harm incurred, tilts in favor of Quest for the same reason. Quest was not in a position to foresee how Amazon was going to account for Plaintiff's status as a Pennsylvania-certified user of medical marijuana in making its employment decision, or how the existence of the license would impact such an employment decision.[6]

Lastly, with respect to the fifth factor, it is in the public interest that no employer discriminates on the basis of an employee's valid medical marijuana certificate if the employer is located in a state in which medical marijuana is legal. This objective is best served by ensuring that the employer is aware of the employee's status by placing the duty to report said status to the employer on the employee themselves.

---

[6] This case illustrates how the employee's duty to report their valid medical marijuana license to their employer works. In this case, the issue of fact is what the employee disclosed to the employer and what the employer did about that disclosure.

As a result of the foregoing, and balancing the Sharpe factors, the Court finds that Quest does not owe a duty to report the existence of Plaintiff's Pennsylvania medical marijuana license to Amazon. Under these circumstances, the Court need not consider Quest's remaining arguments pertaining to negligence, and Plaintiff's claim for negligence will be dismissed with prejudice.[7]

2. Civil Conspiracy

Under Pennsylvania law, to state a civil conspiracy claim, a plaintiff must plead the following elements: "(1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose; (2) an overt act done in pursuance of the common purpose; and (3) actual legal damage." Gen. Refractories Co. v. Fireman's Fund Ins. Co., 337 F.3d 297, 313 (3d Cir. 2003) (quoting Strickland v. Univ. of Scranton, 700 A.2d 979, 987-88 (Pa. Super. Ct. 1997)).

As Plaintiff acknowledges, "[t]he predicate to a civil conspiracy claim is the presence of an underlying tort." Pl.'s Resp. Opp'n Defs.' Mot. Dismiss 8 n.1, ECF No. 29-2; see also Goldstein v. Phillip Morris, Inc., 854 A.2d 585, 590 (Pa. Super.

[7] There are no issues of fact in dispute as between Quest and Plaintiff (although there are as to Plaintiff and Amazon, but they are not material here). Rather, the issue of Quest's duty in this case is a purely legal issue. Therefore, any attempt to amend the claim for negligence would be futile.

Ct. 2004) ("[T]he Appellants have failed to plead or develop any separate underlying intentional or criminal act that can support a civil conspiracy claim. . . . [T]his claim could be dismissed on this basis alone.").

Here, Plaintiffs allege that "Defendant Quest's negligence is the underlying tort." Pl.'s Resp. 8 n.1. But the Court already dismissed Plaintiff's negligence claim with prejudice, and even if the negligence claim survived, "[s]trict liability and negligence counts are insufficient to support [a] civil conspiracy claim." Goldstein, 854 A.2d at 590 (citing Burnside v. Abbott Labs., 505 A.2d 973, 980-82 (Pa. Super. Ct. 1985)). Given that the civil conspiracy claim is based on the same conduct underlying the negligence claim, i.e., Quest's refusal to accept Plaintiff's status as a certified medical marijuana user (which it had no duty to do, see supra Section IV.A.1), Plaintiff's civil conspiracy claim will also be dismissed with prejudice.

**B. Amazon's Partial Motion to Dismiss**

1. Breach of Contract

To adequately plead a claim for breach of contract, Plaintiff must allege: "(1) the existence of a contract, including its essential terms, (2) a breach of the contract; and, (3) resultant damages." Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. Law Firm of Malone Middleman, P.C., 137 A.3d

1247, 1258 (Pa. 2016) (citing J.F. Walker Co., Inc. v. Excalibur Oil Grp., Inc., 792 A.2d 1269, 1272 (Pa. Super. Ct. 2002)). While a contract "may be manifest orally," Plaintiff must nonetheless plead facts that support the existence of such an oral agreement. See Sullivan v. Chartwell Inv. Partners, LP, 873 A.2d 710, 716-17 (Pa. Super. Ct. 2005) (quoting J.F. Walker, 792 A.2d at 1272).

Under Pennsylvania law, "an employment relationship is generally considered to be at-will and absent a specific statutory or contractual provision it is terminable by either party at any time." Marsh v. Boyle, 530 A.2d 491, 493 (Pa. 1987) (citing Betts v. Stroehmann Bros., 512 A.2d 1280, 1291 (Pa. Super. Ct. 1986)). If "an employment arrangement does not contain a definite term, it will be presumed that the employment at-will rule applies." Id. (citing Banas v. Matthews Int'l Corp., 502 A.2d 637 (Pa. Super. Ct. 1985)).

Amazon argues that Plaintiff's breach of contract claim should be dismissed because "Plaintiff has not provided any averments as to the specific essential terms of the alleged oral agreement, including start date, end date, specific duties, and amount of consideration." Amazon's Mot. Dismiss 3, ECF No. 26-1. The averments in the Amended Complaint suggest otherwise.

First, Plaintiff alleges that his start date was April 16, 2020. Am. Compl. ¶ 7, ECF No. 23. Second, Plaintiff alleges he

was told during orientation that the role would last eleven months.[8] Am. Compl. ¶ 8. Simple math demonstrates that Plaintiff's end date would have been March 16, 2021. Third, Plaintiff alleges that his job title was a Seasonal Fulfillment Associate, and that his specific job duties involved working as a "Picker" during the third shift (6:15 p.m. to 4:45 a.m., Sunday through Wednesday). Am. Compl. ¶ 7. Lastly, Plaintiff alleges that the amount of consideration was $15.05 per hour. Am. Compl. ¶ 7. Thus, Plaintiff has pled the specific essential terms of the alleged oral agreement.[9]

As a result of the foregoing, Plaintiff has adequately pled the existence of a contract. Thus, Amazon's motion to dismiss Plaintiff's breach of contract claim will be denied.

2. Implied Covenant of Good Faith and Fair Dealing

---

[8] Plaintiff's allegation of eleven months distinguishes this case from Marsh, where the court found that an "employer's assurances that Appellant would be working as publisher 'for at least two years' was not sufficiently definite to take the agreement out of the at-will employment presumption." 530 A.2d at 494. While Plaintiff's response to Amazon's motion to dismiss states that his position was expected to last approximately eleven months, that word does not appear in the Amended Complaint, which is the controlling document with respect to a motion to dismiss.

[9] Amazon's assertion during oral argument that Plaintiff must plead further terms, such as under what circumstances he can be fired, is not supported by Pennsylvania case law. See, e.g., Sullivan, 873 A.2d at 716-17 (finding plaintiff adequately pled the existence of an oral agreement where he alleged his employer offered to pay him a certain amount for the entire year and plaintiff accepted the offer). Although there is an unpublished Eastern District of Pennsylvania case which states that "[f]rom Plaintiff's Complaint, it is unclear what the employment contract was, or what its essential terms were, such as compensation, whether he was an at-will employee, and under what circumstances he could be terminated," the court does not cite to any Pennsylvania case law for the proposition that the circumstances under which an employee can be terminated is an essential term that must be included in a complaint. Reid v. Heartland Payment Sys., No. 17-4399, 2018 WL 488055, at *4 (E.D. Pa. Jan. 19, 2018).

Next, Amazon argues that Plaintiff's claim for breach of the implied covenant of good faith and fair dealing (the "implied covenant") should be dismissed because Pennsylvania law does not recognize an independent claim for the implied covenant. However, the Amended Complaint does not include an independent claim for the implied covenant. Rather, Count II encompasses both claims for breach of contract and breach of the implied covenant. Since the Court declines to dismiss the breach of contract claim, the implied covenant claim remains attached and does not qualify as an independent claim. Thus, Amazon's motion to dismiss the implied covenant will be denied.

**C. Leave to Amend**

Leave to amend should be freely granted unless there is an apparent reason why it should not be, such as futility of amendment. Foman v. Davis, 371 U.S. 178, 182 (1962). In this case, Counts IV-V (i.e., Plaintiff's claims against Quest) are futile for the reasons explained above, see supra Section IV.A, so Plaintiff will not be granted leave to amend.

**V. CONCLUSION**

For all of the aforementioned reasons, Quest's motion to dismiss will be granted, and Amazon's partial motion to dismiss will be denied. An appropriate order follows.